**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **PUBLISH** |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 07-00279** |
| | ) | |
| **REBECCA IRENE JUNKINS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter comes before the Court on the United States' Request for *Daubert* Hearing
(doc. 66), the United States' Motion in Limine (doc. 76), and the United States' Motion for a
Hearing (doc. 77). The evidentiary issues presented in the Motions have been briefed and are
now ripe for disposition.

**I.      Background.**

Defendant Rebecca Irene Junkins has been charged with two counts of sexual
exploitation of children, in violation of 18 U.S.C. § 2251(a), as well as one count of possession
of images of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256(8)(A).
(*See* Indictment (doc. 27).) These charges relate to allegations that, between May 25, 2007 and
July 14, 2007, Junkins (who was 18 years old during that time period) engaged in sexually
explicit conduct with two of her nieces, aged approximately 7 and 11; that she took nude
photographs of them; and that she downloaded those photographs to her computer and
transmitted the images via Internet to a person named Jake, whom Junkins has never met but
whom she characterizes as her boyfriend.

At trial, Junkins intends to offer the expert testimony of psychologist John F. Warren,
Ph.D.  Dr. Warren's expert report dated January 21, 2008 expresses the following opinions to a
reasonable degree of medical and scientific certainty: (1) Junkins "was victimized by an online
sexual predator for several years prior to the instant offenses"; (2) this "victimization involved a
pattern of seduction" and escalation of abuse toward Junkins, as well as Junkins' own behavior
in the subject conduct with her nieces; (3) at the time of the alleged offenses, Junkins "was

subject to undue influence of her abuser"; and (4) Junkins poses a low risk for recidivism.  (Doc. 71, Exh. A, at 1.)  Review of Dr. Warren's report reflects his impression that Junkins is a physically, socially, emotionally and cognitively immature teenager who was abused and manipulated by an Internet sexual predator (known only as "Jake") into performing the conduct that forms the basis of the Indictment.  Dr. Warren diagnoses Junkins as a victim of sexual abuse and finds that she has a "clearly identified anxiety disorder" resulting from "impoverished parenting and social adaptation," the abuse she suffered via Jake, and her own immaturity.

In both its Request for *Daubert* Hearing (doc. 66) and its Motion in Limine (doc. 76), the Government asserts that Dr. Warren's opinions are not relevant to any issue the jury will be asked to decide at trial, and that they are therefore inadmissible.  Defendant counters that Dr. Warren's testimony is relevant to the threshold issue of intent.  Having carefully reviewed the parties' multiple filings (docs. 66, 71, 76, 83, & 84) on this topic, as well as having studied Dr. Warren's report in detail, the Court determines that the Government's Motion to exclude Dr. Warren's testimony can properly be decided on the parties' written submissions, without the need for an evidentiary hearing.[1]

## II.    Analysis.

### A.    *No Affirmative Defense.*

The most appropriate starting point for assessing the admissibility of Dr. Warren's

---

[1]      It is well established that a hearing is not required every time a party invokes a *Daubert*-type objection.  *See, e.g., Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1252 n.10 (11th Cir. 2007) ("although they are often helpful, hearings are not prerequisite to such determinations under the Federal Rules or established law"); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1113 (11th Cir. 2005) (noting that trial court was under no obligation to hold a *Daubert* hearing, although such hearings may be helpful in complicated cases involving multiple experts).  Under the specific circumstances presented here, the Court finds that an evidentiary hearing would serve no useful purpose because the principal *Daubert* issue presented relates not to the scientific validity of Dr. Warren's methodology or techniques, but to the relevance of the opinions identified in his written report to the issues joined for trial.  The Court is fully equipped to make that relevancy determination based on the parties' multiple briefs on the subject, as well as Dr. Warren's report itself.  No party has proffered evidence or argument to the contrary.  Accordingly, the Government's requests for evidentiary hearing (docs. 66, 77) are **denied** because it does not appear that a hearing would materially advance the Court's understanding of these issues or that credibility-based factual determinations will be necessary to resolve the Motion in Limine.

opinions is to confirm what they are not.  The defense has stated in the clearest of terms that Junkins is not pursuing an insanity defense pursuant to 18 U.S.C. § 17(a) (creating an affirmative defense that, at the time of the offense, "the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts"). Likewise, the defense has disclaimed any design to utilize Dr. Warren's testimony "to set up an affirmative defense of duress ... [or] of impaired volitional control or of an excuse." (Defendant's Response (doc. 71), at 1-2; Defendant's Second Response (doc. 83), at 1-2.)  In short, Junkins has unequivocally denied that she is seeking to elicit Dr. Warren's expert psychiatric opinions about her mental state in furtherance of <u>any</u> affirmative defense to the pending charges; therefore, the Court need not explore whether such testimony might have been admissible in furtherance of any such affirmative defenses.

### B.      The **Mens Rea** *Requirement of Section 2251(a).*

Rather than raising one of these affirmative defenses, Junkins emphasizes that she seeks to introduce Dr. Warren's testimony for the sole purpose of "challenging straight up the issue of intent."  (Defendant's Second Response (doc. 83), at 2.)  The law of this Circuit is clear that "[a] defendant can attempt to introduce psychiatric evidence to negate specific intent when such is an element of the offense charged."  *United States v. Ettinger*, 344 F.3d 1149, 1153 (11th Cir. 2003); *see also United States v. Cameron*, 907 F.2d 1051, 1063 (11th Cir. 1990) ("Psychological evidence that aids the trier in determining the defendant's specific state of mind with regard to the actions she took at the time the charged offense was committed ... is not an affirmative defense but is evidence that goes specifically to whether the prosecution has carried its burden of proving each essential element of the crime – at least when specific intent is at issue.").[2]  That said, the *Cameron* court took pains to caution district courts that psychiatric evidence "will only rarely negate specific intent," that such evidence "presents an inherent danger that it will distract the jury[] from focusing on the actual presence or absence of *mens rea*," and that there is a risk that such evidence "may easily slide into wider usage that opens up the jury to theories of

---

[2]      The parties have been unable to agree whether 18 U.S.C. § 2251(a) has a specific-intent or a general-intent element of proof, and have been unable to identify any case authorities shedding light on that question.  However, the Court need not decide this issue, inasmuch as the result of the analysis is the same under either scenario.

defense more akin to justification." *Id.* at 1067 (citation omitted).  For these reasons, the district court "must examine such psychiatric evidence carefully to ascertain whether it would, if believed, support a *legally acceptable* theory of lack of *mens rea*." *Id.* (citation omitted).  That, then, is the Court's task in evaluating the Government's evidentiary motion.

In this regard, 18 U.S.C. § 2251(a), the statute underlying Counts One and Two of the Indictment, unquestionably has a mental state requirement.  To prove a violation of that statute, defendant maintains, the Government must show that she both (1) used a minor to engage in, "with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct," and (2) "kn[ew] or ha[d] reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed."  18 U.S.C. § 2251(a).[3]  Defendant's position, then, is that she cannot be convicted under § 2251(a) unless the Government proves her "intent that the minor engage in sexually explicit conduct for a specific purpose, that is, for producing visual depictions of such conduct, knowing that the depictions will be transported in interstate or foreign commerce."  (Defendant's Second Response (doc. 83), at 2.)

Defendant's framing of the *mens rea* element of the specific § 2251(a) offenses charged against her is inaccurate.  On its face, section 2251(a) criminalizes several categories of child exploitation, to-wit: (1) employing, using, persuading, inducing, enticing or coercing minors to engage in sexually explicit conduct (the so-called "use" category); (2) having a minor assist any other person to engage in such conduct (the "assistance" category); and (3) transporting a minor in interstate or foreign commerce to engage in such conduct (the "transportation" category).  Counts One and Two of the Indictment (doc. 27) clearly provide that Junkins is charged only

---

[3]        That section reads, in pertinent part, as follows: "Any person who employs, ***uses***, persuades, induces, entices, or coerces ***any minor to engage in***, ... or who ***transports any minor in interstate or foreign commerce***, or in any Territory or Possession of the of the United States, ***with the intent that such minor engage in,*** any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (e), ***if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce ....***" 18 U.S.C. § 2251(a) (emphasis added).

with the use category of § 2251(a), and not the assistance or transportation categories.[4]  A

straightforward reading of the statute confirms that the phrase "with the intent that the minor

engage in" applies only to § 2251(a) offenses in the transportation category, not those in the use

or assistance categories.  As one appellate court examining this precise question reasoned:

> "[T]he phrase in question, read naturally, modifies only the transportation
> category.  Any other reading would defeat the linguistic parallelism which marks
> section 2251(a) and would result in a curiously lopsided piece of legislation.
> Here, too, a construction consistent with plain meaning comports with the logic of
> the statute.  One who persuades a minor to engage in sexually explicit conduct ...
> commits an act which in and of itself is worthy of criminal sanction.  By contrast,
> one who transports a minor across state lines (no more, no less) has done nothing
> inherently wrong unless his intent at the time is blameworthy.  On that basis, the
> idea that section 2251(a) embodies an additional scienter requirement (having an
> intent that the minor thereafter engage in proscribed conduct) solely with
> reference to the transportation category is both easily explicable and eminently
> sensible."

*United States v. Carroll*, 105 F.3d 740, 744-45 (1st Cir. 1997) (footnote omitted).  Based on that

analysis, as well as examination of the legislative history of § 2251(a), including specifically the

1986 amendment adding both the transportation category and the additional scienter language,

the *Carroll* court held that the phrase "with the intent that such minor engage in" sexually

explicit conduct does not apply to the use category of § 2251(a).  *See id.*  Although the Eleventh

Circuit appears never to have addressed this narrow question, the *Carroll* holding has been

followed, either explicitly or implicitly, by several other circuits.[5]

---

[4]      Specifically, Count One charges that Junkins "did use a person under the age of
eighteen ... to engage in sexually explicit conduct ...."  (Indictment, at 1.)  Count Two contains
the same language.  (*See id.* at 2.)

[5]      *See United States v. Carroll*, 190 F.3d 290, 294 (5th Cir. 1999) (noting that §
2251(a) contains three separate offenses, and ascribing the "with the intent that such minor
engage in" requirement solely to the transportation category), *withdrawn and vacated on other
grounds*, 227 F.3d 486, 488 (5th Cir. 2000); *Ninth Cir. Crim. Jury Instr.* § 8.150 (recognizing use,
assistance, and transportation categories of § 2251(a) offenses, and applying the "with the intent
that such minor engage in" requirement solely to the transportation category); *United States v.
Runyan*, 290 F.3d 223, 243 (5th Cir. 2002) (in dicta, framing § 2251 scienter requirement as
being that Government must prove that defendant knew or had reason to know at time of
creation of images that such images will be transported in interstate or foreign commerce or
mailed).

After careful consideration, this Court expressly adopts the interpretation of § 2251(a) set forth in the First Circuit's *Carroll* decision.  Thus, where a defendant (like Junkins) has been charged solely with the use category of § 2251(a) offenses, the Government must prove only the following with respect to her mental state: (a) that defendant used a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and (b) that defendant knew or had reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed.  The Court now considers whether the defense expert's opinions weigh against the Government's ability to prove those mental state requisites for a § 2251(a) conviction.

**C.      *Whether Dr. Warren's Opinions will Substantially Assist the Jury.***

The Federal Rules of Evidence, as construed by the Supreme Court in the landmark case of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), "require[] expert scientific evidence to be both reliable and relevant pursuant to Rule 702," such that it "appropriately assists the trier of fact."  *United States v. Henderson*, 409 F.3d 1293, 1302 (11th Cir. 2005).[6]  In that regard, "[t]he court serves as a gatekeeper, charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand."  *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250 (11th Cir. 2007).  As a general proposition, "[i]n determining the admissibility of expert testimony under Rule 702, a district court considers whether (1) the expert is qualified to testify competently regarding the matter he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue."  *United States v. Douglas*, 489 F.3d 1117, 1124-25 (11th Cir. 2007); *see also Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir.

---

[6]      Rule 702 reads as follows: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  *Id.*

2001) (similar).[7]  "The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case."  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

The critical *Daubert* factor implicated by the Government's Motion in Limine is whether Dr. Warren's opinions will assist the trier of fact to understand the evidence or to determine a fact in issue.  There is a fundamental disconnect between the elements of the offense that the Government must prove to convict Junkins at trial, and the proffered expert opinions of Dr. Warren.  As stated, Junkins intends to elicit opinions from Dr. Warren that she was victimized by an online sexual predator for a period of years prior to the offense conduct, that such abuse and manipulation led to her offending behaviors in this case, and that she was subject to "undue influence" of her abuser at the time of the offense.  But the *mens rea* element of the § 2251(a) offenses which Junkins is charged with committing require the Government to show only that she used her minor nieces to engage in explicit sexual conduct for the purpose of producing photographs or video transmissions of such conduct, and that she knew those photographs or video transmissions would move in interstate commerce.  When the two are compared side by side, Dr. Warren's opinions appear to have no bearing on the mental state aspects of the § 2251(a) offenses charged in the Indictment.

The issue boils down to this central query:  How will Dr. Warren's testimony assist the jury in determining whether Junkins harbored a purpose to photograph or video her nieces when she allegedly engaged in explicit sexual conduct with them, or whether she had knowledge that such photos and videos would be transported in interstate commerce?  Defendant, whose burden it is to satisfy the *Daubert* "helpfulness" requirement with respect to her proffered expert, has failed to provide a satisfactory answer to this question.  Instead, defendant's briefs are confined

---

[7]        That said, "[t]he rules relating to *Daubert* issues are not precisely calibrated and must be applied in case-specific evidentiary circumstances that often defy generalization."  *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005).  For that reason, courts have stressed that the *Daubert* inquiry is "a flexible one," that the *Daubert* factors are mere guidelines for applying Rule 702, and that "expert testimony that does not meet all or most of the *Daubert* factors may sometimes be admissible" based on the particular circumstances of the particular case.  *Brown*, 415 F.3d at 1267-68.

to vague statements that Dr. Warren's opinions go to the issue of intent and that the defense disagrees (without specifying the basis for such disagreement) with the Government's view that Dr. Warren's report is devoid of evidence to negate intent. (*See* doc. 71, at 2-4; doc. 83, at 4, 6.) Defendant's position is unsupportable. Even if Dr. Warren is correct that Junkins was manipulated and abused by "Jake" for a period of years, and even if the offense conduct took place while she was under his influence, those facts would in no way suggest that in engaging her nieces in sexual activity she did not have a purpose to video or photograph them in sexually compromising positions, nor would it suggest that she lacked knowledge that such videos and photographs would travel in interstate commerce. Far from negating these mental state requirements, Dr. Warren's opinions concerning Jake's influence actually reinforce that Junkins' purpose in allegedly molesting her nieces was to create visual depictions of those sex acts and to transmit them to Jake. If, as Dr. Warren insinuates, Junkins committed these offenses at Jake's behest for Jake's enjoyment (just as, according to Dr. Warren, Junkins had submitted to other previous requests by Jake for sexual behavior as part of his "seduction" of her), then she necessarily had the purpose of creating visual depictions of the sex acts and knowledge that such visual depictions would travel in interstate commerce. Otherwise, Jake (who was not physically present when the offense occurred) would have been able to view neither the sex acts defendant allegedly perpetrated on the minor children nor the nude poses of said minor children.[8]

In short, it is the opinion of this Court, after careful scrutiny of Dr. Warren's expert report and defendant's briefs in support thereof, that his opinions, if believed by the jury, would not support a legally acceptable theory of lack of *mens rea*. Indeed, Dr. Warren's opinions would "merely present a dangerously confusing theory of defense more akin to justification and excuse than a legally acceptable theory of lack of *mens rea*." *Cameron*, 907 F.2d at 1067 (citation omitted); *see also Clark v. Arizona*, --- U.S. ----, 126 S.Ct. 2709, 2735, 165 L.Ed.2d 842

---

[8]     Stated differently, nothing about Dr. Warren's opinions could rationally support a finding by the jury that Junkins did not engage in explicit sex acts with her nieces for the purpose of producing visual depictions of same, or that Junkins did not know that such visual depictions would be transmitted in interstate commerce. To the contrary, Dr. Warren's opinions that Junkins was acting under the influence of Jake support a finding that her purpose in performing the offense conduct was to create still and/or video images of said conduct for transmission to her purported abuser over the Internet.

(2006) ("Evidence of mental disease, then, can easily mislead; it is very easy to slide from evidence that an individual with a professionally recognized mental disease is very different, into doubting that he has the capacity to form *mens rea*, whereas that doubt may not be justified," and "opinions about mental disease may confuse a jury into thinking the opinions show more than they do"); *United States v. Westcott*, 83 F.3d 1354, 1358 (11th Cir. 1996) (reiterating that "only psychiatric evidence which supports a *legally acceptable* theory of lack of *mens rea* should be admitted") (citation omitted).  For that reason, even if defendant is correct that the § 2251(a) counts of the Indictment charge specific-intent offenses, Dr. Warren's expert opinions would not be helpful to the trier of fact.  That evidence may be helpful for mitigation purposes at sentencing if defendant is found guilty, but it is not relevant to any issue presented to the jury for determination at trial.  Defendant is not pursuing any affirmative defenses pertaining to her mental state, and this expert testimony in no way can negate the *mens rea* element that the Government must prove at trial.  Even worse, Dr. Warren's testimony would create an unacceptable risk of confusing the jury into thinking that a defense of justification or excuse was properly before them, when such is not the case.

**III.    Conclusion.**

For all of the foregoing reasons, the Government's Motion in Limine (doc. 76) is **granted**, and the expert testimony of Dr. Warren will be **excluded** from trial pursuant to Rules 402, 403, and 702 of the Federal Rules of Evidence.  The Government's Request for *Daubert* Hearing (doc. 66) and Motion for a Hearing (doc. 77) are **denied** because no evidentiary hearing is necessary to resolve the admissibility of Dr. Warren's opinions under the Federal Rules of Evidence.

DONE and ORDERED this 6th day of March, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE